Meyer Seif v. Commissioner. Aaron Seif v. Commissioner.
Seif v. Commissioner
Docket Nos. 53660, 53663.
United States Tax Court
T.C. Memo 1957-136; 1957 Tax Ct. Memo LEXIS 115; 16 T.C.M. (CCH) 612; T.C.M. (RIA) 57136; July 29, 1957
James J. Quinn, Esq., and Clarence P. Brazill, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies in income tax and additions to tax under section 293(b) with respect to Meyer and Aaron Seif as follows: Meyer Seif, Docket No. 53660
Sec. 293(b)
Additions
Year
Deficiency
to Tax
1944
$ 3,285.54
$ 1,642.77
1945
12,850.05
6,425.03
1946
26,582.70
13,291.35
1947
183.22
91.61
1948
439.58
219.79
Totals
$43,341.09
$21,670.55
Aaron Seif, Docket No. 53663
1944
$ 3,346.83
$ 1,673.42
1945
13,073.33
6,536.67
1946
28,257.78
14,128.89
1947
166.66
83.33
Totals
$44,844.60
$22,422.31
Respondent concedes that *116 there was no fraud as to Meyer Seif for the years 1947 and 1948, or as to Aaron Seif for the year 1947. There was no appearance on behalf of either petitioner, and no evidence was offered on their behalf. For certain years, respondent concedes lower deficiencies than those set forth in his statutory notice. Reference thereto will be made in our Opinion. The only practical issue for consideration is whether respondent has met the burden of proving that some part of the deficiency of each petitioner for each of the years 1944, 1945 and 1946 was due to fraud with intent to evade taxes. The cases were consolidated on motion of respondent at the time of trial. Findings of Fact Neo Style Pleating Company was a partnership, doing business under that name in New York City, comprised of two equal partners, Aaron Seif and Meyer Seif, during the years 1944 and 1945. Neo Style Pleating Company was a labor contractor furnishing labor for pleating and tucking of ladies skirts. During the year 1944, Neo Style Pleating Company did business with only one customer, Chic Togs Company, located in New York City. Chic Togs Company would furnish skirts to Neo Style Company which would then do the *117 necessary pleating and tucking on said skirts, ship them back to the customer, and bill them for the labor involved pursuant to a previously agreed price. The only records of Neo Style Pleating Company made available to respondent's investigating agent was a cash receipts and disbursements book for each of the years 1944 and 1945. Chic Togs Company's total purchases from Neo Style Pleating Company for the year 1944 were $48,841.64. The total sales reported by Neo Style Pleating Company for the year 1944 were $27,948.62. A sale of $1,131.88 to Chic Togs Company on February 1, 1944, was not entered at all on the books of Neo Style Pleating Company and the funds in that amount were deposited by Meyer Seif and his wife in their joint account at the Marine Midland Trust Company on February 1, 1944. A purchase made by Chic Togs Company from Neo Style of $2,772.43 on February 24, 1944, was not recorded on the books of Neo Style Company and was deposited in the account of Meyer and Helen Seif at Marine Midland Trust Company on February 25, 1944. A purchase made by Chic Togs Company from Neo Style and paid by check on April 7, 1944, in the amount of $2,224.25 was not recorded on Neo *118 Style's books and was deposited by Meyer and Helen Seif in their account at the Federation Bank and Trust Company on April 13, 1944. A purchase made by Chic and paid to Neo by check on May 18, 1944, was not recorded on the books of Neo and was deposited by Aaron and Alice Seif in their personal account in the Trade Bank and Trust Company on May 19, 1944. A purchase of $2,510.84 on June 23, 1944, was recorded on the books of Neo Style as $810.84 and the difference of $1,700 was entered as a cash exchange item. There was a deposit of $1,700 made in the personal account of Aaron and Alice Seif at Trade Bank and Trust Company on June 27, 1944. A purchase in the amount of $2,322.85 on July 19, 1944, by Chic Togs was recorded on the books of Neo Style in the amount of $1,322.85. The $1,000 difference was entered as a cash exchange item and a disbursement in that amount to a J. R. Schul. The petitioners furnished no information concerning the identity of said individual nor any reason for payments to him, although such information was requested by the investigating agent. A purchase of $2,699.07 on August 22, 1944, by Chic Togs to Neo Style was entered by Neo Style as a sale of $544.07. *119 The difference was entered as a cash exchange item. The offsetting credits were represented by three separate checks, one for $250 payable to cash, one for $405 also to cash, and a third of $1,500 payable to Made-Rite Sportswear Company. No explanation was given. On September 11, 1944, a purchase by Chic Togs in the amount of $3,136.34 was recorded on the books of Neo Style as $2,736.34 and the $400 difference was entered as a cash exchange item. On October 25, 1944, a purchase by Chic Togs in the amount of $3,750.34 was recorded on Neo Style's books as $1,050.34. The difference of $2,700 was not recorded in any manner and the entire amount of $3,750.34 was deposited in the personal account of Aaron and Alice Seif on October 26, 1944, at Trade Bank and Trust Company. A payment made by Chic Togs on November 21, 1944, in the amount of $2,500 was not recorded at all on Neo Style's books and was deposited in the personal account of Aaron and Alice Seif in the Trade Bank and Trust Company on November 22, 1944. A payment made by Chic Togs to Neo Style on December 8, 1944, in the amount of $2,231.28 was recorded on Neo Style's books as $1,431.28 and the difference of $800 was treated *120 as a cash exchange item with offsetting check disbursements payable to cash for $500 and $300, respectively. A payment made by Chic Togs to Neo Style on December 14, 1944, in the amount of $1,500 was not recorded on the books of Neo Style and was deposited in the personal account of Aaron and Alice Seif on December 18, 1944, at Trade Bank and Trust Company. There were 24 separate purchases made by Chic Togs from Neo Style in 1944. Six of these were omitted entirely from the records of Neo Style and six were understated, the difference, with one exception, being entered as cash exchange items traceable to the personal accounts of one or the other of the petitioners or to unexplained cash withdrawals. The gross receipts as reflected on the books of Neo Style were $27,948.62 and the same amount was reported on its partnership return for 1944. The distributive share of the profits to each partner of Neo Style based on the gross receipts reported is $3,758.69. Meyer Seif and Aaron Seif each reported $3,758.69 as income received from Neo Style. In 1945, Neo Style had two customers, Chic Togs Company and Made-Rite Sportswear Company. Made-Rite Sportswear Company was a partnership *121 consisting of three equal partners: Aaron, Meyer and Abraham Seif. The total purchases of Chic Togs from Neo Style in 1945 were $44,512.88. The total purchases of Made-Rite from Neo Style in 1945 were $32,249.19. The total sales recorded and reported by Neo Style for 1945 were $46,151.14. A purchase made by Chic Togs from Neo Style in the amount of $2,577.99 on January 18, 1944, was recorded by Neo Style as $469.56. The check was endorsed to Louis J. Septimus, a brother-in-law of Aaron Seif, in repayment of a loan previously made to Aaron. In January 1945, a Chic Togs check for $2,314.76 was recorded on the books of Neo Style as $1,954.76 and a Made-Rite check for $1,243.44 was not recorded at all. A Chic Togs payment of $2,500 on February 13, 1945, was recorded by Neo Style as $175 on February 14, 1945, and $200 on February 15, 1945, for a net understatement of $2,125. In March of 1945, Neo Style undestated one sale by $300 and did not record another sale of $2,683.82. In May 1945, two purchases by Chic Togs in the respective sums of $2,000 and $4,062.60 were unrecorded by Neo Style. From June to December of 1945, Neo Style did not enter individual sales but entered *122 only lump sum deposits. Neo Style's total sales recorded for June 1945, were recorded in two deposits of $4,854.61 and $13.97, both on June 15, 1945. Made-Rite made two purchases of $2,897.19 and $1,971.39. Chic Togs made two purchases of $932.05 and $2,000. There was a net understatement of sales of $2,932.05. For June 1945, Made-Rite payments were recorded in one lump sum. Chic Togs payments were not recorded at all. These checks were deposited in the personal account of Abraham Seif at the Trade Bank and Trust Company. In July 1945, Neo Style recorded a deposit of $2,307.94. Three purchases were made by Chic Togs in the amounts of $512.07, $970.99 and $2,000, respectively, and one by Made-Rite in the amount of $1,339.31. One Chic Togs check was endorsed over to and deposited in the personal account of Abraham Seif at the Trade Bank and Trust Company. A similar pattern of understating some sales and not recording others with the lump sum deposit method of recording sales and the difference deposited in the personal bank accounts of either Abraham, Aaron, or Meyer Seif, followed throughout the rest of the year 1945. Aaron and Meyer Seif, the only partners of Neo Style, were *123 indebted to their brother Abraham in the amount of $10,000 each, representing loans made to them in January 1945, at the formation of the Made-Rite partnership. Abraham Seif deposited in his personal bank account a total of eight Neo Style checks or Chic Togs checks payable to Neo Style, dated from May 1945 through December 1945, in the total amount of $13,824.93, at the Trade Bank and Trust Company. The distributive share of each partner of Neo Style for 1945 based upon the reported gross sales of $46,151.14 was reported as $5,346.93. In their respective income tax returns for 1945, Aaron Seif and Meyer Seif each reported as income from Neo Style Pleating Company the sum of $5,346.93. In May 1952, Aaron and Meyer Seif were each indicted in the United States District Court for the Southern District of New York for the evasion of Federal income tax for the year 1945, pursuant to Title 26, Section 145(b) of the United States Code. On May 22, 1952, each pleaded guilty to the charges in the respective indictments. Aaron Seif maintained a brokerage account at Ira Haupt & Co. during the year 1946 from which he derived income in the form of short-term capital gains during the taxable *124 year 1946 in the amount of $1,611.88 which were not reported as income by him for the taxable year 1946. An account in the name of Aaron Seif's wife, Alice Seif, was maintained at Ira Haupt & Co. during the year 1946 from which dividend income in the amount of $62.50, short-term capital gain income in the amount of $1,116.59 and long-term capital gain income in the amount of $2,024.01 were derived. An authorization for Aaron Seif to transact business in the account of his wife, Alice, was on file at Ira Haupt & Co. and Aaron Seif did transact all business in his wife's account during the taxable year 1946. Aaron Seif claimed his wife, Alice, as an exemption for the taxable year 1946 and stated on his return for the taxable year 1946 that his wife did not file a separate return. Aaron Seif did not report the income derived from the brokerage account maintained at Ira Haupt & Co. in the name of his wife, Alice Seif, during the taxable year 1946. An account in the name of Meyer Seif's wife, Helen, was maintained at Ira Haupt & Co. during the taxable year 1946 from which dividend income in the amount of $75, short-term capital gain in the amount of $4,262.51, and long-term capital *125 gain income in the amount of $423.06 were derived. An authorization for Meyer Seif to transact business in the account of his wife, Helen Seif, was on file at Ira Haupt & Co. and Meyer Seif did transact all business in his wife's account during the taxable year 1946. Meyer Seif claimed his wife, Helen, as an exemption for the taxable year 1946 and stated on his return for the taxable year 1946 that his wife did not file a separate return. Meyer Seif did not report the income derived from the brokerage account maintained at Ira Haupt & Co. in the name of his wife, Helen Seif, for the taxable year 1946. A part of each of the deficiencies with respect to Meyer Seif and Aaron Seif for each of the years 1944, 1945 and 1946 was due to fraud with intent to evade taxes. Opinion There was no appearance on behalf of either Meyer or Aaron Seif, and no evidence was submitted on behalf of either. Each has failed to meet the burden of proving error in the determination of deficiencies by the respondent respectively applicable. In view of certain stipulated adjustments in a related case no longer before this Court, however, respondent concedes that the deficiencies applicable to each *126 petitioner in several of the years involved should be reduced. The conceded reduced deficiencies, and the years and the petitioner to which applicable, are as follows: Meyer Seif - Docket No. 53660
Year
Deficiency as reduced
1945
$11,884.21
1946
11,455.80
1947
23.57
1948
307.58
Aaron Seif - Docket No. 53663
1945
$12,073.92
1946
15,717.64
The reduced deficiencies, as well as those in which there is no reduction, will be reflected in our decision. Subject thereto, we hold for respondent on the issue of deficiencies. We think that our Findings of Fact are dispositive of the issues of fraud without further elaboration except to add that respondent's proof is clear and convincing in its demonstration that a part of each deficiency applicable to the respective petitioners for each of the years 1944, 1945 and 1946 is due to fraud with intent to evade taxes. In view of the reduction of some of the deficiencies based upon respondent's concession, and the necessity of recomputation of additions to tax under section 293(b). Decisions will be entered under Rule 50.